UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 1:14-cv-00290-RL-SLC ) |
| OFFICE CONCEPTS, INC., | ) ) |
| Defendant. | ) |

# OPINION AND ORDER

Before the Court is a motion for sanctions filed by Plaintiff Equal Employment Opportunity Commission ("the EEOC"). (DE 26). In the motion, the EEOC requests that the Court sanction Defendant Office Concepts, Inc. ("Office Concepts"), for spoliation of evidence. The EEOC filed a memorandum in support of its motion (DE 27); Office Concepts has filed a response brief in opposition to the motion (DE 30); and the EEOC has filed a reply brief in support of its motion (DE 34). The motion is now ripe for adjudication.

Also before the Court is a motion to strike, in which Office Concepts seeks to strike attorney-client privileged documents and communications referenced by the EEOC in its motion for sanctions. (DE 31). The EEOC has filed a response in opposition to Office Concepts's motion to strike (DE 35), and Office Concepts has filed a reply brief (DE 36). The motion to strike is also now ripe.

*A. Factual and Procedural Background*

Office Concepts hired Lynsey Burd in March 2011 as an administrative assistant to the sales representatives. (DE 27-2 at 2; DE 27-1 at 10; DE 24-1 at 4). Burd's job duties included

answering the phone, filing, faxing, preparing quotes, entering orders, and taking care of the web orders. (DE 27-2 at 2; DE 24-1 at 4). Burd frequently communicated with the other employees at Office Concepts by email. (DE 27-3 ¶ 5). Burd's supervisor was Amy Gerhardstein. (DE 27-2 at 2; DE 24-1 at 4). Burd informed Gerhardstein that she was pregnant in April 2012. (DE 27-1 at 10; DE 27-2 at 3; DE 24-1 at 15).

On or about May 2, 2012, Vicki Wells, another administrative assistant to the sales representatives, resigned from her position with Office Concepts. (DE 24-3 ¶ 7). Wells later filed for unemployment and cited a hostile work environment as the reason she left her job at Office Concepts; specifically, Wells stated that Burd was the reason for the hostile work environment. (DE 24-3 ¶ 7).

Burd had to leave work unexpectedly due to pregnancy-related illness on July 10, 2012. (DE 27-1 at 13). While Burd was out of the office, another administrative assistant, Carie Templeton, logged onto Burd's computer and accessed Burd's emails. (DE 27-1 at 3). Templeton found an email on Burd's computer and brought it to Gerhardstein's attention, which prompted Gerhardstein to check the rest of Burd's emails. (DE 27-1 at 4). These emails were between Burd and various coworkers, and Burd admits they were inappropriate. (DE 27-1 at 17-69; DE 27-2 at 4).

On July 12, 2012, Attorney Jon A. Bragalone, Office Concepts's counsel, sent an email to the president of Office Concepts, Kurt Snouffer. (DE 27 at 3-4). This email contained a draft separation agreement between Burd and Office Concepts. (DE 27 at 3-4). The email itself has not been provided as an exhibit to the Court because it is the subject of Office Concepts's motion to strike. (DE 35 at 1 (The EEOC offers, in its response to Office Concepts's motion to strike, to

provide the email to the Court under seal for an *in camera* review.)).

On the morning of July 16, 2012, Gerhardstein brought the emails to the president of Office Concepts, Kurt Snouffer. (DE 24-3 ¶ 10; DE 27-4 at 7). Snouffer reviewed the emails, and several of the emails were particularly concerning to him, including an email stating that Burd had taken another employee's prescription drugs while on the job and an email stating that Burd wanted "to beat the shit out of" another employee, and an email stating that Burd felt like she had "to have a bloody knife in [her] hand for [the other employee] to accept responsibility." (DE 27-4 at 8-9). Snouffer was greatly concerned that his other employees were in danger of Burd causing them physical harm. (DE 27-4 at 9-10). Snouffer found that Burd was the aggressor or the active party in the emails, while the other employee was the passive party. (DE 27-4 at 11-12). Snouffer also found that Burd was aggressive in the other emails, but that those three were particularly aggressive. (DE 27-4 at 12).

Snouffer decided to terminate Burd based partly on the emails, but also based on the accumulation of her other behavior. (DE 27-4 at 12). Gerhardstein had previously informed Snouffer that Burd had a bad attitude and was having problems getting along with Gerhardstein and the other employees. (DE 27-4 at 11-12). Burd was terminated later that same day, July 16, 2012. (DE 27-4 at 3).

On July 19, 2012, Burd's attorney served notice upon Office Concepts that Burd was unwilling to sign Office Concepts's release form as she believed she had been discriminated against due to her pregnancy. (DE 27-5). On July 20, 2012, Burd filed a charge with the EEOC claiming that she had been discriminated against and wrongfully terminated due to her gender and pregnancy. (AR 27-6). Office Concepts received notice of the charge on August 6, 2012

3

(DE 27-7 at 1). This notice included information regarding Office Concepts's duty "to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge." (DE 27-7 at 2). The notice states that "[t]he term *personnel records relevant to the charge*, for example, would include personnel or employment records relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates [f]or the same position as that for which the aggrieved person applied and was rejected." (DE 27-7 at 2). Additionally, the notice explained that Office Concepts must preserve such records until "the date of expiration of the statutory period within which the aggrieved person may bring a lawsuit or, where an action is brought against an employer either by the aggrieved person, the Commission, or the Attorney General, the date on which such litigation is terminated." (DE 27-7 at 2).

Office Concepts hired Angela Brock as Burd's replacement on August 13, 2012. (DE 27-9; DE 27-1 at 5). Office Concepts deleted Burd's profile and email account approximately two weeks after Brock was hired and began using the computer that had been assigned to Burd. (DE 27-8 at 13-14). While Office Concepts did not have any written policies regarding the reassignment of work stations or the retention of emails, the normal procedure was to "leave the old profile and old email up for about two weeks, and then . . . wipe that data clear just to make room on the new system to speed the new system up." (DE 27-8 at 3-4, 11, 14). At the time, Office Concepts was using an email company that limited the number of email accounts. (DE 27-8 at 15).

In October 2013, the computer that Burd had used when she worked at Office Concepts

was recycled after the hard drive had been destroyed. (DE 27-8 at 12). All of the computers in the front office area were replaced in October 2013. (DE 27-8 at 12-13). Office Concepts did not retain any of the hard drives from the computers that were replaced in October 2013. (DE 27-8 at 13). At the time Burd left Office Concepts, the computers in the front office area were five or six years old and did not have much hard drive space. (DE 27-8 at 17). Office Concepts had not considered backing up the emails on Burd's old computer before destroying it. (DE 27-8 at 17).

### B. Office Concepts's Motion to Strike

The Court must first rule on Office Concepts's motion to strike, before turning to the EEOC's motion for sanctions, because the Court must determine whether it may consider the evidence Office Concepts seeks to strike when ruling on the motion for sanctions. Office Concepts contends that the communications and documents contained in the July 12, 2012, email from Bragalone to Snouffer are protected by the attorney-client privilege and therefore should be stricken from the EEOC's memorandum in support of its motion for sanctions, "or at least excluded from the Court's consideration" of the motion. (DE 31 ¶ 15).

The attorney-client privilege has long been recognized by the courts. *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (citations omitted). "The privilege is intended to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'" *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). "The party seeking to invoke the privilege bears the burden of proving all of its essential elements," *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997), which are:

5

>
> (1) that legal advice was sought;
> (2) from a professional legal advisor in his capacity as such;
> (3) the communication related to that purpose;
> (4) the communication was made in confidence;
> (5) the communication was made by the client to the legal advisor or by the legal advisor to the client; and
> (6) the client has not waived the privilege,

*Estes v. Health Ventures of S. Ill.*, No. 05-741-DRH, 2006 WL 3196834, at *2 (S.D. Ill. Nov. 3, 2006) (citing *Evans*, 113 F.3d at 1461).

The EEOC argues that the information it used in its sanctions brief regarding the July 12, 2012, email is not protected by the attorney-client privilege, because the EEOC only included references to the information that would be part of a privilege log—the identities of the authors and recipients, a general description of the type of document, the date of the document, and a general description of the subject matter of the document—which Office Concepts itself included in its first privilege log. Office Concepts disagrees and argues that the EEOC should not be permitted to reference even the descriptions given in the privilege log. Because I find that Office Concepts waived any attorney-client privilege regarding the July 12, 2012, email, as discussed in detail below, I need not address the parties' dispute regarding whether the EEOC's references to the email in its briefing were privileged information.

"Federal Rule of Evidence 502 addresses waiver of attorney-client privilege, and Rule 502(b) sets forth a test for whether inadvertent disclosures made in a Federal proceeding operate as a waiver of privilege." *Sidney I. v. Focused Retail Prop. I, LLC*, 274 F.R.D. 212, 215 (N.D. Ill. 2011) (quoting Fed. R. Evid. 502) (internal quotation marks omitted). Under Rule 502(b), the disclosure of information "does not operate as a waiver . . . if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3)

6

the holder promptly took reasonable steps to rectify the error . . . ." Fed. R. Evid. 502(b). "The party asserting privilege has the burden of proving he has satisfied the requirements of Rule 502(b)." *Sidney I.*, 274 F.R.D. at 215 (citing *Heriot v. Byrne*, 257 F.R.D. 645, 655 (N.D. Ill. 2009)).

*1. Inadvertence*

First, the Court must determine whether Office Concepts's disclosure of the July 12, 2012, email to the EEOC was inadvertent. While there is no bright-line rule regarding whether production was inadvertent, courts consider the circumstances surrounding the disclosure of the privileged document. *Judson Atkinson Candies, Inc.* v. *Latini-Hohberger Dhimantec*, 592 F.3d 371, 388 (7th Cir. 2008). To determine if disclosure was inadvertent, a court must ask "whether the party intended a privileged or work-product protected document to be produced or whether the production was a mistake." *Coburn Group, LLC v. Whitecap Advisors, LLC*, 640 F. Supp. 2d 1032, 1038 (N.D. Ill. 2009) (citing Fed. R. Evid. 502). Here, the parties do not seem to dispute that Office Concepts's production of the July 12, 2012 email between Bragalone and Snouffer was not intentional, and thus the Court finds that the disclosure was inadvertent.

*2. Reasonable Steps to Prevent Disclosure*

Second, the Court must determine whether Office Concepts took reasonable steps to prevent the disclosure of documents protected by the attorney-client privilege. The Advisory Committee Notes to Rule 502 state that the rule is "a set of non-determinative guidelines that vary from case to case." Fed. R. Evid. 502 advisory committee's note (Nov. 28, 2007). The Advisory Committee Notes further explain that "considerations bearing on the reasonableness of a producing party's efforts include the number of documents to be reviewed and the time

7

constraints for production." Fed. R. Evid. 502 advisory committee's note (Nov. 28, 2007). "Where discovery is extensive, mistakes are inevitable and claims of inadvertence are properly honored so long as appropriate precautions are taken." *Judson Atkinson Candies, Inc.*, 529 F.3d at 388 (quoting *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 417 (N.D. Ill. 2006)).

Here, Office Concepts produced "in excess of 300,000 pages" of emails and attachments that were responsive to the EEOC's requests. (DE 31-1 ¶ 3). The discovery was thus undoubtedly extensive, but "[m]erely listing the volume of production will not suffice." *Excel Golf Prods., Inc. v. MacNeill Eng'g Co.*, No. 11 C 1928, 2012 WL 1570772, at *3 (N.D. Ill. May 3, 2012) (citing *Comrie v. Ipsco, Inc.*, No. 08 C 3060, 2009 WL 4403364, at *1 (N.D. Ill. Nov. 30, 2009)). "The producing party must offer specific facts and details to show the procedures were reasonable." *Id.* (citing *Kmart Corp. v. Footstar, Inc.*, No. 09 C 3607, 2010 WL 4512337, at *4 (N.D. Ill. Nov. 2, 2010)). The limited information provided to the Court on this matter shows that Office Concepts's counsel did not review the emails prior to producing them to the EEOC; instead, Attorney Bragalone asked Office Concepts itself "to ensure that no attorney-client privilege[d] communications were included in the production" "as it gathered the responsive emails." (DE 31-1 ¶ 4). Attorney Bragalone informed counsel for the EEOC that he was having Office Concepts screen the emails for privilege, and noted "that in the event any email or document was produced that included communications with counsel, it was attorney-client privileged." (DE 31-1 ¶ 4).

The Court notes that in order to claim the protections offered by attorney-client privilege, the producing party must produce a timely and adequate privilege log. *See* Fed. R. Civ. P. 26(b)(5)(A); *Miller v. City of Plymouth*, No. 2:09-CV-205-JVB-PRC, 2011 WL 1740154, at *4

8

(N.D. Ind. May 5, 2011). Attorney Bragalone's statement to the EEOC that any communications with counsel that were produced were attorney-client privileged is insufficient to assert privilege, which "must be made on a document-by-document basis." *Miller*, 2011 WL 1740154, at *4 (quoting *In re Grand Jury Proceedings*, 220 F.3d 568, 572 (7th Cir. 2000)) (internal quotation marks omitted). Additionally, "not all communications between the attorney and the client are privileged," rather, the privilege applies "only if the communications constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence." *Heriot*, 257 F.R.D. at 656 (citing *Judson Atkinson Candies, Inc.*, 529 F.3d at 388; *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990)) (internal quotation marks omitted). Thus, Attorney Bragalone could not assert privilege over any and all disclosed communications between Office Concepts and its counsel. Furthermore, Office Concepts's failure to prepare and produce a privilege log to the EEOC until months after the production of the documents causes the Court to question whether Office Concepts identified or withheld any privileged documents during the review supposedly undertaken by Office Concepts itself, without the assistance of its counsel. While Office Concepts argues that the "EEOC does not need to consult a privilege log in order to determine that the July 12, 2012, email is attorney-client privileged" (DE 36 at 2), Office Concepts seems to be unaware that it must review and designate which of its documents are privileged; this burden belongs to Office Concepts, not to the EEOC. *See* Fed. R. Civ. P. 26(b)(5)(A).

The Court will now turn to the reasonableness of the decision to have Office Concepts itself review the documents for privilege without assistance of counsel. Courts in this Circuit have "declin[ed] to hold that the use of paralegals or non-lawyers for document review is unreasonable in every case." *Coburn Group, LLC*, 640 F. Supp. 2d at 1039 (citing *Heriot*, 257

F.R.D. at 660 n. 10).  However, these courts have noted that document review by non-lawyers is only reasonable where they "have the legal training necessary to implement and oversee reasonable review procedures," *MSP Real Estate, Inc. v. City of New Berlin*, Nos. 11-C-281, 11-C-608, 2011 WL 3047687, at *7 (E.D. Wis. July 22, 2011), and where they "were given specific direction and supervision by a lawyer who is lead counsel in the case," *Coburn Group, LLC*, 640 F. Supp. 2d at 1039.  Office Concepts has not provided any information regarding the training and experience of the individuals conducting the document review, nor has it provided any information about the actual process used by these individuals to determine whether documents were privileged.  Office Concepts has therefore failed to meet its burden to provide "specific facts and details to show the procedures were reasonable," *Excel Golf Prods., Inc.*, 2012 WL 1570772, at *3, and has thus failed to give the Court any basis to find that Office Concepts's review of the documents for privilege without counsel was reasonable.

A simple search of the emails for Attorney Bragalone's name would have made obvious the emails which most likely contained privileged attorney-client communications such that "[e]ven a cursory review would have alerted an attorney to the privileged nature of the communications." *MSP Real Estate, Inc.*, 2011 WL 3047687, at *8.  Office Concepts has not shown that it did this simple search or used any other methods to identify and withhold privileged communications from production.  I therefore find that the steps taken by Office Concepts to prevent the disclosure of privileged communications—if any were taken—clearly were not the reasonable precautions required by Rule 502(b)(2).  Office Concepts has thus waived the attorney-client privilege with respect to the July 12, 2012, email at issue.

*3. Prompt and Reasonable Steps to Rectify Inadvertent Disclosure*

Even if the Court were to find that Office Concepts had taken reasonable steps to *prevent* the disclosure of privileged documents, the Court would still find waiver because Office Concepts failed to take prompt and reasonable steps to *rectify its error* in disclosing the privileged documents including the July 12, 2012, email.  On July 31, 2015, the EEOC notified Office Concepts that certain emails and documents which Office Concepts had disclosed were potentially attorney-client privileged.  (DE 31-1 ¶ 5).  Office Concepts states that "[d]ue to the number of emails in the list provided by [the EEOC's counsel], [Attorney Bragalone, Office Concepts's counsel] was not able to issue a privilege log immediately following receipt of [the EEOC's counsel's] email, but such privilege log has now been provided."  (DE 31-1 ¶ 9).  Office Concepts did not provide its first privilege log to the EEOC until September 15, 2015, more than six weeks after having been notified of the disclosure of the potentially privileged documents, and the day after the EEOC had filed its motion for sanctions.  (DE 35 at 3).

As noted by the EEOC in its response, Office Concepts's motion to strike fails to support its argument with citation to legal authority.  (DE 35 at 3).  Office Concepts states in its reply brief that while it "did not cite case law in its Motion, it recited facts and developed arguments that the email and communications are attorney-client privileged and that there has been no waiver of the privilege . . . ."  (DE 36 at 2).  The Court finds Office Concepts's decision in its reply brief to defend its lack of citation to case law in its motion, and then again fail to include any citations to supporting case law in its reply brief, troubling.  Office Concepts has not provided the Court with any examples of factually similar situations in which other courts have found actions similar to those taken by Office Concepts here to be reasonable such that the attorney-client privilege has not been waived.  This leads the Court to believe that no such case

11

law exists, for surely Office Concepts would have provided the Court with authority supporting its argument if any existed.

Office Concepts's failure to provide citation to case law is particularly troubling given the EEOC's citation to authority supporting its contention that Office Concepts waived any attorney-client privilege by failing to act promptly to preserve that privilege. (DE 35 at 8 (citing *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 389 (7th Cir. 2008) for its finding that a delay of three days and subsequent follow-up was reasonable; *Harmony Gold U.S.A. v. FASA Corp.*, 169 F.R.D. 113, 117 (N.D. Ill. 1996) for its finding that a delay of two weeks was "lax at best"; and *Bud Antle, Inc. v. Grow-Tech, Inc.*, 131 F.R.D. 179, 183 (N.D. Cal. 1990) for its finding that a six-week delay in producing a privilege log was neither reasonable nor prompt and thus the privilege was waived)). The Court's own research on the issue further supports a finding that Office Concepts waived its privilege through its delay in seeking to recover the privileged documents after having been informed by the EEOC that certain potentially privileged documents had been produced. *See United States v. Ary*, 518 F.3d 775, 784-85 (10th Cir. 2008) (finding that a six-week delay in asserting privilege was not timely, after noting that a party's delay in asserting protection allows the adverse party to continue using the material, which "negat[es] its confidential character"); *Educ. Assistance Found. for the Descendants of Hungarian Immigrants in the Performing Arts, Inc. v. United States*, 32 F. Supp. 3d 35, 45 (D.D.C. 2014) ("The Court disagrees that these half-hearted and untimely attempts to assert the privilege are sufficient to preserve any claim of privilege as to the document.").

Office Concepts's seven-week delay in issuing a privilege log after having been informed by the EEOC that potentially privileged documents had been produced was unreasonable. Office

Concepts did not attempt to rectify the inadvertent disclosure of privileged documents until after the EEOC cited to those documents in its motion for sanctions. Office Concepts's delay in seeking to recover the documents after being made aware of their disclosure allowed the EEOC to continue using them and negated the confidential character of the documents, including the July 12, 2012, email. *See Ary*, 518 F.3d at 784-85. Thus, Office Concepts waived its privilege by failing to take prompt and reasonable steps to rectify its error in disclosing the privileged documents. *See* Fed. R. Evid. 502(b)(3).

*4. Conclusion as to Office Concepts's Motion to Strike*

Office Concepts's arguments, unsupported by citation to case authority, have failed to persuade this Court that it is entitled to the relief it has requested in its motion to strike. *See Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) (citations omitted) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived."). It is Office Concepts's burden, as the party seeking to invoke the privilege, to show that the privilege has not been waived, *Sidney I.*, 274 F.R.D. at 215 (citations omitted); Office Concepts has failed to meet that burden. The Court therefore finds that Office Concepts waived its privilege with respect to the inadvertently disclosed documents, including the July 12, 2012, email between Attorney Bragalone and Snouffer. Accordingly, Office Concepts's motion to strike (DE 31) will be DENIED.

*C. The EEOC's Motion for Sanctions*

The Court will now turn to the EEOC's motion for sanctions, and will include the email dated July 12, 2012, in its consideration of the motion for sanctions. In its motion, the EEOC seeks an adverse inference instruction against Office Concepts as a sanction for its spoliation of

evidence, specifically the destruction of Burd's emails, other than the emails retained by Office Concepts to support its termination decision, from the computer she used while employed by Office Concepts. In the alternative, the EEOC seeks to exclude the retained emails from being used by Office Concepts for purposes of summary judgment or trial.

Sanctions for spoliation of evidence include "awarding reasonable expenses, attorney fees, barring evidence or arguments, permitting adverse inferences, and dismissing claims or entering default judgment." *Bryant v. Gardner*, 587 F. Supp. 2d 951, 968 (N.D. Ill. 2008) (citing Fed. R. Civ. P. 37(b)(2)(A)(I)-(vii)). "An award of sanctions must be proportionate to the circumstances . . . ." *Langley v. Union Elec. Co.*, 107 F.3d 510, 515 (7th Cir. 1997) (quoting *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1382 (7th Cir. 1993)) (internal quotation marks omitted).

Courts make a "two-part inquiry" to determine whether a sanction is warranted for spoliation of evidence. *Malibu Media, LLC v. Tashiro*, No. 1:13-cv-00205-WTL-MJD, 2015 WL 2371597, at *11 (S.D. Ind. May 18, 2015) (citing *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008)). First, "a spoliation sanction [is] proper only where a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent." *Trask-Morton*, 534 F.3d at 681 (citations omitted); *see also Norman-Nunnery v. Madison Area Tech. Coll.*, 625 F.3d 422, 429 (7th Cir. 2010) (finding no spoliation where the evidence was destroyed before the defendant knew or should have known that litigation was imminent)). Second, "a showing [of bad faith] is a prerequisite to imposing sanctions for the destruction of evidence." *Trask-Morton*, 534 F.3d at 681 (citing *Crabtree v. Nat'l Steel Corp.*, 261 F.3d 715, 721 (7th Cir. 2001)). While "a violation of a record retention regulation creates a

14

presumption that the missing records contained evidence adverse to the violator, . . . a violation of 29 C.F.R. § 1602.14, the EEOC record retention regulation, would not automatically trigger an adverse inference." *Park v. City of Chi.*, 297 F.3d 606, 615 (7th Cir. 2002) (citations and internal quotation marks omitted).

*1. Duty to Preserve Relevant Evidence*

First the Court will look to whether, at the time the emails were destroyed, Office Concepts had a duty to preserve the emails at issue because it knew or should have known that litigation was imminent. Office Concepts deleted Burd's profile and email account on or about August 27, 2012, two weeks after Brock was hired as Burd's replacement, following normal procedure. Office Concepts had received notice on August 6, 2012, that Burd had filed a charge with the EEOC, and the notice informed Office Concepts of its duty to preserve payroll and personnel records relevant to the charge. This notice was made pursuant to 29 C.F.R. § 1602.14, which states that

> Any personnel or employment record made or kept by an employer (including but not necessarily limited to requests for reasonable accommodation, application forms submitted by applicants and other records having to do with hiring, promotion, demotion, transfer, lay-off or termination, rates of pay or other terms of compensation, and selection for training or apprenticeship) shall be preserved by the employer for a period of one year from the date of the making of the record or the personnel action involved, whichever occurs later. In the case of involuntary termination of an employee, the personnel records of the individual terminated shall be kept for a period of one year from the date of termination. Where a charge of discrimination has been filed, or an action brought by the Commission or the Attorney General, against an employer under title VII, the ADA, or GINA, the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action. The term "personnel records relevant to the charge," for example,

> would include personnel or employment records relating to the
> aggrieved person and to all other employees holding positions
> similar to that held or sought by the aggrieved person and
> application forms or test papers completed by an unsuccessful
> applicant and by all other candidates for the same position as that
> for which the aggrieved person applied and was rejected.

29 C.F.R. § 1602.14. The entirety of a former employee's emails do not meet the definition of "personnel records relevant to the charge" as described in the regulation, and thus the notice of the charge did not make Office Concepts aware that it had any obligation to preserve these emails. Even if Office Concepts's actions violated the regulation, the Seventh Circuit has made clear that a violation of § 1602.14 does not automatically trigger an adverse inference instruction. *See Park*, 297 F.3d at 615.

The Court must also consider whether Office Concepts had a duty to preserve arising apart from § 1602.14. "At the latest, this duty [to preserve relevant evidence] attaches when the plaintiff informs the defendant of her potential claim." *Haraburda v. Arcelor Mittal USA, Inc.*, No. 2:11 cv 93, 2011 WL 2600756, at *1 (N.D. Ind. June 28, 2011) (citing, *inter alia*, *Trask-Morton*, 534 F.3d at 681, for its finding that the defendant was on notice of the claim when it received the plaintiff's demand letter; *Jones v. Bremen High Sch. Dist. 228*, No. 08 C 3548, 2010 WL 2106640, at *6 (N.D. Ill. May 25, 2010), for its finding that the employer's duty to preserve relevant documents arose at the time it learned the employee had filed EEOC charges; and *Wells v. Berger, Newmark & Fenchel, P.C.*, No. 07 C 3061, 2008 WL 4365972, at *7 (N.D. Ill. Mar. 18, 2008), for its finding that the employer's duty to preserve sexually explicit emails began when the employer received notice of a sexual harassment charge filed by the employee with the state department of human rights). Here, Office Concepts was informed of Burd's potential

16

claim when it received the notice of the EEOC charge on August 6, 2012; thus Office Concepts was on notice of Burd's claim and was aware that litigation was imminent, and it had a duty to preserve the evidence that was relevant and material to the case.

The evidence at issue here (the entirety of Burd's email history, apart from the emails retained and relied upon by Office Concepts in deciding to terminate Burd) would likely have been discoverable, as Rule 26 "poses a very low hurdle—it permits discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." *Robbins v. Provena Saint Joseph Med. Ctr.*, No. 03 C 1371, 2004 WL 502327, at *1 (N.D. Ill. Mar. 11, 2004) (citations and internal quotation marks omitted). However, the emails which were deleted are not material, as the EEOC is not prejudiced by their destruction. While the EEOC has argued that it is prejudiced because it needs the emails to show that Burd had good working relationships with her colleagues, the EEOC has alternative avenues for establishing the state of Burd's relationships with her colleagues—the testimony of Burd herself and the testimony of the colleagues she had good relationships with. The EEOC contends that "the jury may give less weight to uncorroborated testimony than corroborated" testimony (DE 34 at 5), but Burd's colleagues can corroborate her testimony that they had good working relationships, if such was the case.

*2. Bad Faith*

The Court now turns to the second part of the inquiry as to whether spoliation sanctions are warranted—that the evidence was destroyed in bad faith. "A party destroys a document in bad faith when it does so 'for the purpose of hiding adverse information.'" *Bracey v. Grondin*, 712 F.3d 1012, 1019 (7th Cir. 2013) (citing *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644

(7th Cir. 2008)). "Thus, the crucial element is not that evidence was destroyed but rather the reason for the destruction." *Park*, 297 F.3d at 615 (citations and internal quotation marks omitted).

The evidence before the Court establishes that Office Concepts deleted Burd's profile and email account according to its standard procedure, two weeks after Burd's replacement had been hired. (DE 27-8 at 13-14). Burd's old computer had been reassigned to her replacement, and Office Concepts routinely removed prior employee user data when a computer was reassigned to a new employee, in order to make room on the computer to speed the system up. (DE 27-8 at 14). At the time Burd was terminated and replaced, Office Concepts was using an email provider that limited the number of email accounts it could use. (DE 27-8 at 15). The computer Burd had been using was five or six years old and did not have much hard drive space. (DE 27-8 at 17). Later, in October 2013, Office Concepts replaced all of the computers in the area where Burd had worked, including the computer Burd had used, and the hard drives on the old computers were destroyed. (DE 27-8 at 12-13).

None of these actions rise to the level of bad faith; rather they seem to be ordinary business decisions. Faced with older computers with limited hard drive space, as well as a limit on the number of email accounts, Office Concepts made a practical decision to remove the old profiles and email accounts from computers that had been reassigned to new employees. Office Concepts's deletion of Burd's profile and email account were done according to its standard procedure for any computer that had been reassigned to a new employee. The EEOC charge notice did not instruct Office Concepts to retain Burd's email history; rather, it only required Office Concepts to retain payroll and personnel information, which Office Concepts did retain.

18

Office Concepts also retained the emails which played a role in the company's decision to terminate Burd. Office Concepts had no reason to believe that the remainder of Burd's emails would be necessary to any potential future lawsuit.

While Office Concepts did destroy emails which would have been discoverable, its actions were not in bad faith, as the destruction of the emails appears to have been a routine and practical matter as opposed to an attempt to hide adverse evidence. The EEOC remains able to put on evidence that Burd had good working relationships with colleagues through her testimony and the testimony of her colleagues. Thus, the Court finds that the circumstances surrounding Office Concepts's destruction of the emails do not rise to the level required for sanctions. The adverse inference instruction requested by the EEOC as a sanction is thus not warranted here; neither is the alternative sanction of exclusion of the emails retained by Office Concepts.

### 3. *Conclusion as to the EEOC's Motion for Sanctions*

Accordingly, the EEOC's motion for sanctions (DE 26) will be DENIED.

### D. Conclusion

For the reasons outlined above, Office Concepts's motion to strike (DE 31) is DENIED, and the EEOC's motion for sanctions (DE 26) is also DENIED.

SO ORDERED.

Entered this 22nd day of December 2015.

/s/ Susan Collins  
Susan Collins  
United States Magistrate Judge